**ARCHITECHNOLOGY, INC.,
a corporation, Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for Crescent
Federal Savings Bank, Defendant.**

**Civ. A. No. 89–0434–RV.**

United States District Court,
S.D. Alabama, S.D.

June 12, 1991.

Greg F. Jones, Elberta, Ala., and Thomas S. Williams, Robertsdale, Ala., for plaintiff.

Jerome E. Speegle and Matthew C. Mc-Donald, Mobile, Ala., for defendant.

## ORDER

VOLLMER, District Judge.

This cause is before the court on the motion for summary judgment, filed by defendant Federal Deposit Insurance Corporation as Receiver for Crescent Federal Savings Bank ("FDIC"), and all materials submitted in support thereof (tabs 17, 23, and 26), and on plaintiff Architechnology, Inc.'s ("Architechnology") response thereto (tabs 19, 20, and 21).[1] After due and proper consideration, the court concludes that defendant's motion is due to be, and hereby is, GRANTED for the reasons that follow.

### Background

This case originated as an "appeal" from an adverse agency determination. Plaintiff, a New Orleans, Louisiana, based architectural firm, was hired by Captain Cajun's, Inc. ("Captain Cajun's"), also a New Orleans based corporation, to perform certain architectural work on real property owned by Captain Cajun's and located in Mobile County, Alabama (the "Mobile County property") Plaintiff's Complaint, ¶¶ 2 and 3; *see also* Plaintiff's Response to Request for Admissions, ¶ 1 (attached as Exhibit "A" to Defendant's Motion for Summary Judgment). Architectural services were performed by Architechnology beginning on May 20, 1985, with the last architectural services allegedly concluding on November 1, 1985. *See* Plaintiff's Response to Defendant's Interrogatories and Request for Production of Documents, ¶ 1 (attached as Exhibit "B" to Defendant's Motion for Summary Judgment).

On or about August 5, 1985, Captain Cajun's executed a mortgage on the Mobile County property to Crescent Federal Savings Bank, a federally-chartered savings bank then headquartered in New Orleans ("Crescent Federal"). Plaintiff's Complaint, ¶ 6. The proceeds of the mortgage loan allegedly were to be used to facilitate the construction of a Captain Cajun's restaurant on the Mobile County property. *Id.*

Plaintiff avers that it never received payment for the architectural services it performed on behalf of Captain Cajun's. Plaintiff's Complaint, ¶ 8. Captain Cajun's nonpayment prompted plaintiff to file an architect's (mechanics) Verified Statement of Claim of Lien (the "lien") against the Mobile County property, pursuant to *Alabama Code* § 35–11–213. *Id.*

The lien filed against the Mobile County property originally erroneously was filed in the Office of the Judge of Probate of *Baldwin County*, Alabama, on or about April 17, 1986. *See* Exhibit "A" to Plaintiff's Complaint. Thereafter, on April 30, 1986, a certified copy of the Baldwin County lien was recorded in the Office of the Judge of Probate in Mobile County, Alabama. *See* Plaintiff's Response to Request for Admissions, ¶ 3; *see also* Certified Copy of Baldwin County Lien as Recorded in Mobile County (attached as Exhibit "C" to Defendant's Motion for Summary Judgment).

Plaintiff's lien lists the owners or proprietors of the Mobile County property as Robert Harte and Jim House. *See* Exhibit "A" to Plaintiff's Complaint; *see also* Plaintiff's Response to Request for Admissions, ¶ 4.[2] The lien does not list Captain Cajun's as the owner or proprietor of the property and, in fact, Captain Cajun's is not listed anywhere on the lien. *Id.* Captain Cajun's, however, was the owner of the Mobile County property both at the time the architectural services were performed by plaintiff and at the time plaintiff filed its architect's lien against the property. *See* Plaintiff's Response to Request for Admissions, ¶¶ 1, 2, & 4. The lien does not indicate how, if at all, Robert Harte and/or

---

1. Plaintiff's response to defendant's motion for summary judgment actually was styled as a motion for summary judgment. The court previously has notified the parties of its intention to treat plaintiff's motion for summary judgment as a response to defendant's motion.

2. Robert Harte and Jim House are the principals, officers, and shareholders of Captain Cajun's. Plaintiff's Complaint, ¶ 16,

Jim House were connected with Captain Cajun's.

Architechnology never filed an amendment or correction to the lien subsequent to the initial filing of the lien in Baldwin County to list Captain Cajun's as the owner or proprietor of the Mobile County property or to reflect that the lien was attached to Mobile County property.

Concurrent with the filing of plaintiff's architect's lien in Mobile County, plaintiff filed suit against Captain Cajun's in the Circuit Court of Mobile County, Alabama (CV 86–1146), seeking judicial enforcement of the lien. Plaintiff's Complaint, ¶ 9. On June 3, 1986, Crescent Federal foreclosed on the Mobile County property. *Id.* Presumably, as a consequence of the foreclosure, Crescent Federal became involved in the Circuit Court proceedings.

At some time after foreclosure and while the Circuit Court proceedings remained pending, Crescent Federal became insolvent and the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as receiver. Plaintiff's Complaint, ¶ 10. The FSLIC consequently became involved in the Circuit Court action and, shortly thereafter, removed the action to federal district court. *Id.* at ¶ 11.

Following removal, plaintiff's claim was relegated by the court to administrative review by the FSLIC, pursuant to 12 U.S.C. § 1464 *et seq.*, and 12 U.S.C. § 1729 *et seq.* After conducting appropriate administrative hearings, plaintiff's claim was denied. Plaintiff's Complaint, ¶ 12 and 13. The FSLIC's determination was affirmed on appeal to the Federal Home Loan Bank Board ("FHLBB") by letter dated May 9, 1989. *Id.* ¶ 14 (*see* Letter attached as Exhibit "B" to Plaintiff's Complaint). This suit ensued.[3]

From what this court can discern, plaintiff asserts two related "claims" against the FDIC—one alleging a breach by the

FSLIC (defendant's predecessor in interest) of its alleged statutory duty to "settle" plaintiff's claim against Crescent Federal and seeking a declaration of the validity and amount of plaintiff's lien, and the other, seeking damages for an alleged breach of an oral or written promise made by the FSLIC or the FHLBB to Architechnology to pay plaintiff's lien on a " 'preferred basis' so long as said claim was valid under Alabama law." Plaintiff's Complaint, Count Two ¶ 3. Both claims, in essence, require this court to determine whether plaintiff's lien is legally sufficient under controlling precedent, a determination which, in this court's opinion, may be made as a matter of law.

### Discussion

At the outset, the court notes that plaintiff characterizes this action as an "appeal" from an adverse agency determination and requests a *de novo* determination of its claim. *See* Plaintiff's Complaint, ¶ 17. Defendant originally denied plaintiff's entitlement to a *de novo* hearing by this court, *see* Defendant's Answer, ¶ 17, but subsequently admitted that the *de novo* standard of review does apply. *See* Supplemental Brief of Federal Deposit Insurance Corporation in Support of Its Motion for Summary Judgment, ¶ 1. *See also Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960); *State of Alabama v. TVA*, 467 F.Supp. 791, 798 (N.D.Ala.1979), *rev'd on other grounds*, 636 F.2d 1061 (5th Cir. 1981), *cert. denied*, 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981).

Under Federal Rule of Civil Procedure 56(c), summary judgment is due to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

3. Originally, the parties to this action included Architechnology, as plaintiff, and the FSLIC, as Receiver of Crescent Federal Savings Bank, Crescent Federal Savings Bank (erroneously referred to in the style of the complaint as "Crescent Federal Savings and Loan of New Orleans, Louisiana"), and the Federal Home Loan Bank Board, as defendants. By joint stipulation of the parties, the FDIC eventually was substituted for the original named defendants. (*See* tabs 6 and 7).

law." The party moving for summary judgment

bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991) (Cox, J.) (concluding that *"Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden"). In assessing a motion for summary judgment, the court must conduct a bifurcated inquiry, assessing in the first instance whether the moving party has satisfied its initial, exacting and arduous burden, and, in the second instance, whether the non-moving party successfully has rebutted the moving party's initial showing of no genuine issues of material fact.

In this case, the essential, material facts, as set forth hereinabove, are undisputed. The parties merely disagree as to the legal ramifications of those facts. In the court's opinion, therefore, the bifurcated inquiry called for in *Clark* is unnecessary and, instead, the court only must determine the legal significance of the facts.

The undisputed facts of the case, as above enumerated, raise two issues of relevance to the validity of plaintiff's lien. First, does plaintiff's failure to designate Captain Cajun's as the "owner or proprietor" of the Mobile County property render plaintiff's architect's lien fatally defective under *Alabama Code* § 35–11–213? Second, does plaintiff's improper reference to "Baldwin County" in the verified lien render plaintiff's lien fatally defective? The court finds it unnecessary to consider the latter issue since, in the court's opinion, the former error renders the lien legally insufficient.

Section 35–11–213, *Alabama Code*, governing the filing of mechanic's liens, provides, in relevant part, as follows:

It shall be the duty of every person entitled to such lien to file in the office of the judge of probate of the county in which the property upon which the lien is sought to be established is situated, a statement in writing, verified by the oath of the person claiming the lien, or of some other person having knowledge of the facts, containing ... the name of the owner or proprietor thereof.

Significantly, the statute further provides that "no error in the amount of the demand or *in the name of the owner or proprietor* ... shall affect the lien." *Id.* The latter language sometimes is, and hereinafter shall be, referred to as the "savings clause." Section 35–11–232, *Alabama Code*, defines the terms "owner or proprietor" as including "[e]very person, including cestuis que trust, for whose use, benefit or enjoyment any building or improvement shall be made...."

Generously construed, plaintiff makes a two-fold argument in asserting the validity of its mechanic's lien. First, plaintiff contends, though not emphatically, that Robert Harte and Jim House are "owners or proprietors" of the Mobile County property, within the meaning of *Ala.Code* §§ 35–11–213 & –232. Second, plaintiff vigorously maintains that even if Robert Harte and Jim House do not qualify under the statute as "owners and proprietors" of the Mobile County property, plaintiff's failure correctly to designate Captain Cajun's as the true owner and proprietor does not render the lien invalid in light of the savings clause. Taken to its logical extreme, under plaintiff's theory no error in the naming or identification of an owner or proprietor, except perhaps a complete failure to include such information, would render a mechanic's lien invalid.

Defendant, in contrast, essentially asserts that Captain Cajun's is the correct "owner or proprietor" of the Mobile County property and that plaintiff's complete *mis-*

*designation* of Robert Harte and Jim House as the owner or proprietors should not be "protected" by the savings clause. Instead, according to the defendant, the savings clause should be construed *in tandem* with the long line of Alabama cases which requires substantial compliance with the terms and conditions of section 35–11–213, and thus be interpreted as preventing only minor or insignificant errors in the naming or identification of an "owner or proprietor" from rendering a lien invalid.

As the parties' respective arguments suggest, the court must conduct a two-fold analysis in resolving the ultimate issue of the validity of the Architechnology lien. First, the court must consider whether Robert Harte and Jim House qualify as "owners or proprietors" of the Mobile County property. If they do not so qualify, then the court must determine whether Architechnology's failure correctly to identify the owner or proprietor of the Mobile County property on the lien has any effect on the validity of the lien in light of the savings clause.

As noted, section 35–11–232 identifies an "owner or proprietor" as including "[e]very person, including cestuis que trust, for whose use, benefit or enjoyment any building or improvement shall be made...." The term can include persons, including corporations, who have no fee interest in the real property on which the building or improvement is located (*i.e.*, a lessee in possession for whom a lienor has provided construction services).

■ Under plaintiff's theory, Robert Harte and Jim House should qualify as "owners or proprietors" of the Mobile County property presumably because, as officers of Captain Cajun's, the plaintiff's architectural services were rendered for their "use, benefit or enjoyment." Although undoubtedly Robert Harte and Jim House at least were in a position to benefit from plaintiff's services, whatever benefit they may have received derived solely from benefits conferred on the corporation, Cap-

tain Cajun's. Such an indirect benefit is not, in this court's opinion, sufficient to qualify one as an "owner or proprietor" for purposes of the lien statutes.[4] None of the cases cited by plaintiff supports a different conclusion.

■ Having thus determined that Robert Harte and Jim House were improperly designated as "owners or proprietors," the court next must consider what effect, if any, the savings clause has on the validity of the lien. On its face, the savings clause would appear to protect the validity of a lien against *any* error in the naming of an "owner or proprietor," except perhaps an omission of such information. Both parties acknowledge the absence of any published Alabama court decisions which expressly discuss the breadth and import of the savings clause as such clause relates to errors in the "naming" of an "owner or proprietor." The court, through its own research, has confirmed that lack of authority.[5]

The court carefully has reviewed the mechanic's lien statutes, including section 35–11–213 and all prior codifications of that section, case law pertaining generally to construction of the mechanic's lien statutes, and the entire file in this matter, including the affidavit of Ferrell S. Anders, appended to defendant's "supplemental brief ... in support of its motion for summary judgment." After due consideration of those materials, the court concludes that, notwithstanding its sweeping language, the savings clause was intended to excuse or to protect the validity of a lien against only minor errors in the identification of an "owner or proprietor," which errors are not substantially or seriously misleading. The savings clause was *not* intended to protect an otherwise valid lien against a purported lienor's *misdesignation* of an "owner or proprietor." If the clause were interpreted otherwise, then a lienor essentially could perfect a "secret lien" against a title owner of property.

---

**4.** The court is compelled to reach this conclusion notwithstanding the fact that Captain Cajun's may be a closely-held corporation.

**5.** The court also was unable to find a documented legislative history of the savings clause.

Ample authority supports this conclusion. The court notes, for example, that Alabama courts have not strictly construed the first portion of the savings clause—that is, that portion which states that "no error in the amount of the demand ... shall affect the lien." Instead, in considering the effect of that language, courts consistently have held that the clause is intended to protect against an "inadvertent" or "honest" mistake, and not a "willfully false" demand. *See Byrum Hardware Co. v. Jenkins Bldg. Supply Co.*, 226 Ala. 448, 147 So. 411 (1933); *Fleming v. McDade*, 207 Ala. 650, 93 So. 618 (1922); *Alabama & Georgia Lumber Co. v. Tisdale*, 139 Ala. 250, 36 So. 618 (1903). Furthermore, the conclusion is supported generally by those cases which mandate substantial compliance with the terms of the mechanic's lien statutes. *See, e.g., Fowler v. Mackentepe*, 233 Ala. 458, 172 So. 266 (1937).

The result achieved also is consistent with the statutory objective of giving notice to subsequent purchasers and creditors. *See id.* As the affidavit of Ferrell S. Anders succinctly relates,[6]

> [t]he recording division of the Office of the Judge of Probate of Mobile County utilizes an index known as a Grantor/Grantee index and transactions are indexed in that manner rather than by the legal description of the property being conveyed.

> \*　\*　\*　\*　\*　\*

> In a situation where a materialman's lien is filed against the incorrect owner of a parcel of property, a person checking the chain of title would not detect such a lien because the lien would appear outside the chain of title of the property being examined.

If, as here, a lienor were to misdesignate the owner or proprietor of the property, the lien created would be "secret," and the statutory objective of giving notice would be utterly subverted.

6. Ferrell S. Anders is a duly-licensed, practicing real estate attorney. His affidavit is appended

*Conclusion*

In light of the foregoing discussion, the court concludes that defendant's motion for summary judgment is due to be, and hereby is, GRANTED.